IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00886-CBS

MARSHA SINGLETON,

        Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,

        Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Craig B. Shaffer

      This action comes before the court pursuant to Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401, *et seq.*; 1381, *et seq.*, for review of the Commissioner of Social Security's final decision denying Marsha Singleton's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Pursuant to the Order of Reference dated January 5, 2016, this civil action was referred to the Magistrate Judge for all purposes. *See* Doc. 25. The court has carefully considered the Complaint (filed April 27, 2015) [Doc. 1], Defendant's Answer (filed July 13, 2015) [Doc. 8], Plaintiff's Opening Brief (filed October 19, 2015) [Doc. 15], Defendant's Response Brief (filed November 18, 2015) [Doc. 16], Plaintiff's Reply Brief (filed December 22, 2015) [Doc. 21], the entire case file, the administrative record, and the applicable law. For the following reasons, the court affirms the Commissioner's decision.

1

## BACKGROUND

In September 2009, Marian Gunn applied for DIB and SSI, alleging a disability onset date of March 1, 2009. Doc. 9-2 at 15. Ms. Gunn alleged that her ability to work was limited by a number of impairments, including vertigo, a right knee injury, and depression. Doc. 9-3 at 4, 15. Claimant was born on October 1, 1959, and was 49 years old on the date of her alleged disability onset. *Id.* She completed the 12[1]th grade[1] and has previous work experience as a customer service representative, checking clerk, clerical assistant, kitchen aide, and warehouse worker. Doc. 9-2 at 83, 37. After her initial application was denied, Claimant requested a hearing, which was held on September 14, 2011, before Administrative Law Judge ("ALJ") Lowell Fortune. Doc. 9-2 at 78.

On February 2, 2010, the ALJ issued a decision finding Ms. Singleton not disabled as defined under the Act. Doc. 9-3 at 47. On August 6, 2013, the Appeals Council ("AC") granted Claimant's request for review, vacated the hearing decision, and remanded the case for further proceedings. Doc. 9-3 at 54-56. The AC specifically took issue with the ALJ's treatment of the non-treating medical source opinion, stating "[t]he decision did not adequately address the medical opinion of the consultative examiner, Dr. Borja" because it failed to "acknowledge or identify the specific consideration given to the functional limitations opined by Dr. Borja." *Id.* at 54. Thereafter, the ALJ held a supplemental hearing on October 22, 2013 and issued another unfavorable decision (hereinafter "Decision") a month later. Doc. 9-2 at 37-38, 45.

The ALJ's opinion followed the five-step process outlined in the Social Security regulations.[2] At step one, the ALJ found that Claimant had not engaged in substantial gainful

---

[1] The ALJ noted in the Decision that Claimant has provided conflicting evidence on the issue of education. Doc. 9-2 at 24. Ms. Singleton testified at the September 2011 hearing that 12th grade is the highest level of education she completed, but treatment notes from Salud Family Health Center state "Education: less than high school." *Id.* at 83; Doc. 9-7 at 75.

[2] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which

employment since March 1, 2009. *Id.* at 18. At step two, the ALJ found that Claimant had the

following severe medically determinable impairments: (1) right knee disorder; (2) vertigo; (3)

right hip disorder; (4) cervical spine disorder; (5) obstructive sleep apnea; (6) left knee disorder;

and (7) obesity. *Id.* Claimant's impairments of depressive disorder, left arm/shoulder disorder,

and substance abuse disorder were found to be non-severe. *Id.* at 18-19. The ALJ further found

Claimant's alleged attention deficit disorder and hearing loss to be non-medically determinable

impairments. *Id.* at 19. At step three, the ALJ found that Ms. Singleton did not have an

impairment that met or medically equaled a listed impairment. *Id.* at 19-20.

The ALJ found Ms. Singleton to have the following Residual Functional Capacity

("RFC"):

> The claimant has the residual functional capacity to a full range of light work
> except as follows. The claimant is able to lift 20  pounds occasionally and 10
> pounds frequently. During an 8-hour workday, the claimant is able to stand
> and/or walk two hours and sit six or more hours. The claimant is able to push,
> pull, or otherwise operate hand controls frequently with the [sic] each upper
> extremity. The claimant is able to push, pull, or otherwise operate foot controls
> occasionally with each lower extremity. The claimant is unable to perform
> overhead reaching with her left, non-dominant upper extremity. The claimant
> should avoid unprotected heights and climbing ladders, scaffolds, and ropes.
> The claimant is unable to perform the following postural activities: balancing
> and walking on uneven terrain. The claimant cannot engage in work requiring
> intense, sustained concentration.

*Id.* at 20-21. The ALJ concluded that although Claimant's medically determinable impairments

could reasonably be expected to cause her alleged symptoms, the evidence did not support a

finding that she was as limited as she claimed. *Id.* at 21-31. The ALJ's reasons for finding that

Ms. Singleton's allegations lacked sufficient credibility to support a finding of disability fit into

---

met or equaled the severity of a listed impairment; (4) could return to past relevant work; and, if not (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). After step three, the ALJ is required to assess the claimant's functional residual capacity. 20 C.F.R. §§ 404.1520(e), 416.920(e). The claimant has the burden of proof at steps one through four whereas the Social Security Administration bears the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

five broad categories: (1) Claimant's assertions as to her impairments are not consistent with her self-reported activities of daily living and functional limitations; [*Id.* at 23] (2) Claimant has given evidence that is contradicted by or inconsistent with other evidence in the record related to her ability to exercise, ability to work, vertigo onset date, and level of education; [*Id.* at 23-24] (3) Claimant has provided evidence that has either exaggerated the facts or magnified her symptoms when testifying to the frequency of her dizzy spells as well as the frequency and purpose of her treatment at Salud clinic; [*Id.* at 24-25] (4) Claimant's conduct has not been consistent over time with respect to her ability to sit for extended periods of time and her ability to concentrate; [*Id.* at 25] and (5) Claimant's testimony at the September 2011 hearing was suggested by her attorney's leadings questions in nine instances. *Id.* at 26.

At step four, the ALJ determined that Ms. Singleton is capable of performing her past relevant work as a customer service representative, checking clerk, and clerical assistant. *Id.* at 36-37. Accordingly, the ALJ denied Claimant's application for disability benefits because she is not disabled under the Act. *Id.* at 34.

Following the ALJ's decision, Ms. Singleton requested review by the Appeals Council. *Id.* at 2-4. The Appeals Council denied her request on February 24, 2015. *Id.* The Decision issued on November 22, 2013, then became the final decision of the Commissioner. 20 C.F.R. § 404.981; *Nelson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993) (citation omitted). Ms. Singleton filed this action on April 27, 2015. Doc. 1. The court has jurisdiction to review the final decision of the Commissioner. 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards and is supported by substantial

evidence in the record as a whole. *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The court may not reverse an ALJ simply because it may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision. *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (citation omitted). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (citation omitted). The court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070 (citation omitted). Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

## ANALYSIS

On appeal, Ms. Singleton challenges the ALJ's credibility determination and his evaluation of opinion evidence in the record.

### I.   Credibility Assessment

Ms. Singleton asserts that the ALJ erred in finding some of her statements not entirely credible because this conclusion was based on misstatements or mischaracterizations of the record. Doc. 15 at 14-23. Plaintiff also contends that the ALJ's analysis improperly considered the attorney's use of leading questions during the hearing as well as Claimant's failure to pursue

treatment. *Id.* at 22, 27-28. After reviewing the administrative record, the court concludes "the balance of the ALJ's credibility analysis is supported by substantial evidence in the record." *Branum v. Barnhart*, 385 F.3d 1268, 1274 (10th Cir. 2004).

Credibility assessments are conducted based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929. An ALJ must determine whether a claimant's statements concerning the intensity, persistence and limiting effects of her symptoms are credible "once an underlying physical and mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown." SSR 96-7p, 1996 WL 374186, *2 (S.S.A. July 2, 1996). "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). "[F]indings as to credibility should be closely and affirmatively linked to substantial evidence," *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (citations and internal quotation marks omitted). An ALJ should consider the following factors in making a credibility determination:

> [T]he levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Thompson*, 987 F.2d at 1489 (citing *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (further citations omitted). "But so long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, he need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (citation and internal quotation marks omitted).

###### A. *Impermissible Request to Reweigh Evidence*

Upon reviewing the Decision, it is clear that the bulk of Plaintiff's argument against the ALJ's credibility determination amounts to an impermissible request to reweigh the evidence rather than a challenge on substantial evidence grounds. *See Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991) ("In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency."). The court may not reweigh the following contested findings: (1) Claimant's activities of daily living include doing laundry and cleaning; [Doc. 15 at 15-16] (2) Claimant's activities of daily living include using public transportation; [*Id.* at 16] (3) Claimant reported seemingly greater functional abilities at the end of 2010 than at the beginning of the year while continuing to assert that her condition had not improved; [*Id.* at 16-17] (4) Claimant's activities of daily living include regular exercise;[3] [*Id.* at 17-18] (5) Claimant has given inconsistent evidence about her inability to work; [*Id.* at 18-19] (6) Claimant has given inconsistent evidence regarding the onset of her vertigo condition; [*Id.* at 19] (7) Claimant exaggerated the frequency of her vertigo episodes while testifying at the September 2011 hearing; [*Id.*] (8) Claimant has given inconsistent evidence about the level of her education; [Doc. 21 at 4-5]; (9) Claimant's alleged sitting limitation is inconsistent with her conduct during the September 2011 hearing; [Doc. 15 at 21] (10) Claimant's alleged difficulty concentrating is inconsistent with her conduct during the September 2011 hearing; [Doc. 21 at 6-

---

[3] The ALJ discusses Ms. Singleton's ability to exercise at two points in his credibility determination. First, the ALJ states that Claimant maintains high activities of daily living as evidenced by her statements in April 2010 (*see Consultative Examination*, Doc. 9-7 at 53) and July 2011(*see Platte Valley Medical Center Health History Questionnaire*, Doc. 9-7 at 103) indicating that she performs daily stretches, walks outside twice per week, and engages in occasional vigorous exercise. Doc. 9-2 at 23. Second, the ALJ noted an inconsistency between Claimant's assertion that she was unable to do any vigorous exercise during the September 2011 hearing and her July 2011 questionnaire response indicating that she engaged in occasional vigorous exercise. *Id.* at 24. The Opening Brief conflates these two findings when arguing that the ALJ should have interpreted Ms. Singleton's statements in April 2010 and July 2011 in such a way to find them consistent with one another. Doc. 15 at 17-18. Given that the ALJ based his finding regarding inconsistency only on Claimant's statements in the July 2011 questionnaire and September 2011 hearing, Plaintiff's preferred interpretation of the evidence would not impact it. Nevertheless, to remove any doubt on this issue, the court also notes that both findings pertaining to Ms. Singleton's ability to exercise are clearly supported by substantial evidence in the record.

7] and (10) Claimant provided inaccurate information about her treatment history to a physical therapist.[4] Doc. 15 at 23.

The ALJ linked each of these findings to specific evidence in the record and noted any evidence that weighed against his conclusion. Doc. 9-2 at 23-25, 28; *see also Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely on, as well as significantly probative evidence he rejects."). Plaintiff does not challenge the validity of any supporting evidence or point to additional evidence in the record that the ALJ failed to consider. Instead, Ms. Singleton contends that the ALJ should have interpreted the evidence supporting these findings in a different way. However, an ALJ's finding will stand if supported by substantial evidence regardless of whether the court would have reached a different conclusion. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001) ("Had [the court] been the finder of fact we may well have reached a different conclusion concerning the weight to be given [the doctor's] disability assessment. Nevertheless, we agree… that the ALJ articulated adequate reasons for disregarding [the doctor's] opinion. In light of the narrow scope of our review, we are compelled… to conclude that the record contains substantial support for the ALJ's decision.").

   B.  *Substantial Evidence Challenge*

Plaintiff's Opening Brief includes three proper challenges to the ALJ's findings on substantial evidence grounds: (1) Ms. Singleton reported that she retained the ability to cook "complex meals;" (2) during the September 2011 hearing, Claimant exaggerated the frequency of her treatment at Salud; and (3) some of Claimant's visits to Salud were more related to her disability claim than to treatment.

---

[4] The ALJ addresses this apparent inconsistency in the Decision's section summarizing Ms. Singleton's medical records rather than the section explaining his credibility determination. *See* Doc. 9-2 at 28.

With respect to Ms. Singleton's cooking habits, Plaintiff takes issue with the fact that the Decision uses the term "complex" when the supporting evidence (*i.e., 2010 Function Report*, Doc. 9-6 at 42) actually refers to "complete" meals. *See* Doc. 15 at 15-16. While the descriptors differ, it appears as though the ALJ intended his use of "complex" to have the same meaning as "complete" in this context. In response to a question concerning the types of meals Claimant can prepare on her own, which listed "sandwiches, frozen dinners, or *complete meals with several courses*" as examples, she wrote "sandwiches," "salades" [sic], "frozen dinner," and "some complete meal." Doc. 9-6 at 42 (emphasis added). Claimant indicated that she prepares food or meals "2 or 3 time[s] [per] week," and it takes her "1 to 2 hours for complete meal[s]." *Id.* She further reported that there have been no changes to her cooking habits since her condition began, and she stated "not a big apatite [sic]" as the reason she does not prepare meals. *Id.* With the exception of the substitution of "complex" for "complete," the ALJ's analysis of this point tracks Ms. Singleton's own assertions: "[t]he claimant even indicated that she retained the ability to prepare complex meals two to three times per week. She further indicated that each complex meal generally took one to two hours to complete." Doc. 9-2 at 23. Moreover, the ALJ also noted that Ms. Singleton testified at the September 2011 hearing that "she could only prepare one-dish meals and she would be incapable of preparing a holiday dinner," and she reported "a decrease in her ability to perform her activities of daily living during the October 2013 hearing." *Id.* The ALJ's use of "complex meals" to describe the "complete meals with several courses" that Claimant stated she prepared by herself does not change the weight of the evidence. As such, the court concludes this finding was specifically linked to substantial evidence.

Plaintiff also disputes the ALJ's finding that Ms. Singleton exaggerated the frequency of her treatment at Salud when she testified to receiving regular treatment at that facility, going

every three to four months.[5] *See* Doc. 15 at 19-20. In evaluating the veracity of Claimant's testimony, the ALJ assessed the regularity of Ms. Singleton's treatment at Salud by comparing the number of visits she made to the clinic prior to filing her disability claim in September 2009 ("two visits one year apart") with the frequency of treatment during the two years after filing ("3 times a year—but her appointments were sporadic, with gaps as much as 6 months apart"). Doc. 9-2 at 25. Contrary to Plaintiff's assertion, the Decision specifically discusses each of Claimant's visits to Salud during the two years after she filed for disability.[6] *See id.* at 25, 28. Moreover, the record reveals two gaps in treatment longer than four months, *Salud Treatment Notes*, Doc. 9-7 48, 74-75, and three out of the 11 clinic appointments occurred within a one-month timespan. *Salud Treatment Notes*, Doc. 9-7 at 36, 38, 48. A reasonable mind could find the record supports the conclusion that Ms. Singleton engaged in sporadic treatment at Salud during the two years after filing for disability.

Ms. Singleton's final substantial evidence challenge to the credibility determination concerns the ALJ's finding that "some of the visits [to Salud] were more related to her disability claim that to treatment." Doc. 15 at 20-21 (citing Doc. 9-2 at 25). In explaining this finding, the

[5] Despite Plaintiff's assertion to the contrary, the Decision accurately portrayed Claimant's testimony on this point. The ALJ reasonably inferred that Ms. Singleton testified to visiting Salud approximately every three to four months during the relevant time period even though she prefaced her answer with "try." *See September 2011 Hearing Transcript*, Doc. 9-2 at 87 ("[Claimant's Answer:] I *try* to go at least like every three months, three to four months.") (emphasis added). At the hearing, the ALJ also indicated exactly how he interpreted Claimant's response to his question, *see id.* ("[ALJ:] All right. I will just put approximately ever[y] three to four months."), and Ms. Singleton did nothing to correct the record.

[6] The Opening Brief provides a chronological list of dates that Ms. Singleton visited Salud "prior to the hearing of Sept. 2011" in an effort to demonstrate that the record does not support the ALJ's characterization of her treatment history as "sporadic, with gaps as much as 6 months apart and, in one instance, 1 year apart." Doc. 15 at 20. However, Plaintiff misrepresents the administrative record in two respects. First, the proffered list does not include Ms. Singleton's very first appointment at the clinic on August 13, 2008, which took place one year before her next visit on August 27, 2009. Doc. 9-7 at 41-44. The evidence absolutely supports the ALJ's reference to the one-year gap in treatment here. Second, Plaintiff's list appears to count three of the visits twice, once for the actual date of service and once for the date that the healthcare provider signed the treatment notes (*i.e.,* September 18, 2009; December 21, 2009; and January 11, 2010). *See id.* at 36, 38, 40. Thus, Ms. Singleton actually visited Salud eleven times during the two years leading up to the September 2011 hearing rather than fifteen times as Plaintiff suggests. Furthermore, the court notes that even assuming these purported dates were legitimate treatment visits, substantial evidence would still support the ALJ's finding that Claimant sporadically received treatment from Salud. None of the duplicative entries impact the gaps in treatment longer than four months.

Decision specifically analyzes Claimant's appointments at the clinic during 2010, of which there are three in total. Doc. 9-2 at 25. The treatment notes for the dates in question show that the ALJ reasonably concluded that "all three of the claimant's appointments at the clinic in 2010 were related to disability paperwork in one form or the other." *Id.* The treatment notes from Ms. Singleton's December 17, 2009, visit provide context for her first appointment at Salud in 2010: "The patient has some papers that she needs filled out. We will wait for the results of the x-rays… The patient will return if symptoms persist or worsen and will return next week for results of her x-ray and then we will fill out her papers for disability." Doc. 9-7 at 38.

Claimant did not return a week later as suggested by her healthcare provider. Rather, her next visit to the clinic occurred three weeks later on January 8, 2010. *Id.* at 36. A substantial portion of the treatment notes from that appointment discuss Ms. Singleton's disability claim. *See id.* ("The patient states she is unable to hold down a job. She cannot walk. Her last job she had to walk up and down stairs. She is unable to do that. She is trying to get social security disability... We filled out her papers for social security department of human services. The patient will take those back. We will make copies of her record that are pertinent to her evaluation."). Also, the notes do not mention any complaints from Claimant about new or worsening symptoms; instead, the document suggests that her current medication was effective. *See id.* ("She is taking Celebrex and this has been helping a little bit.").

Five months later, Claimant returned to Salud for her second appointment in 2010. *Id.* at 74. The healthcare provider noted "[w]e filled out about 25 pages of paperwork for [Ms. Singleton's] disability claim" during this "followup" appointment. *Id.* Apart from a toradol shot injection, the treatment notes do not indicate that this appointment involved anything other than completing a large volume of disability paperwork at Claimant's request. *Id.* Ms. Singleton

waited another six months before visiting Salud for the final time that year. *Id.* at 75. Disability paperwork is the first concern listed in two separate sections of the December 2010 treatment notes. *Id.* ("CC: 1. Paperwrk for disability. 2. Swelling in right hand… General Complaints: Pt is here for Med-9 form completion and medication refills."). Substantial evidence supports this finding given the explicit reference to disability paperwork in all three treatment notes.

### C.  Failure to Apply Correct Legal Standards

Plaintiff's Opening Brief appears to argue that the ALJ failed to apply the correct legal test in two instances: the ALJ improperly considered (1) the use of leading questions during the hearing; and (2) Claimant's failure to seek treatment without first considering whether a justifiable excuse existed. The court finds both arguments unavailing.

While Plaintiff's Opening Brief correctly states that administrative hearings are not bound by rules of evidence, *see* Doc. 15 at 22, this point impacts the admissibility of evidence at hearing proceedings as opposed to the weight an ALJ ultimately assigns any one piece of evidence in making his credibility determination. *See* 42 USC 405(b)(1) ("Evidence may be received at any hearing before the Commissioner of Social Security even though inadmissible under rules of evidence applicable to court procedure."); *see also Murray v. Colvin*, No. 13-cv-1097-WJM, 2014 WL 2860278, at *3 (D. Colo. June 23, 2014) ("An ALJ may consider that counsel was asking leading questions in assessing a claimant's credibility because leading may impact credibility."). Here, the ALJ reasons that the presence of leading questions goes to "whether the claimant's evidence during the hearing was independent (ie, initiated by the claimant) or whether it was suggested by others." Doc. 9-2 at 26. The Decision listed nine specific instances during the hearing where Claimant's attorney asked questions that suggested the answer. *Id.* As the ALJ's finding was fairly derived from his own observations during the

hearing, the court is compelled to accept it. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (citations omitted) ("Although an ALJ may not rely solely on his personal observations to discredit a plaintiff's allegations, he may consider his personal observations in his overall evaluation of claimant's credibility.").

Ms. Singleton next contends that the ALJ failed to consider her inability to afford treatment when evaluating her treatment history, as set out in Social Security Ruling ("SSR") 96-7p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements. See* Doc. 15 at 27-28 ("[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment."). Once again, Plaintiff conflates two distinct credibility findings that involve similar evidence. The Decision first discussed treatment frequency in determining that Ms. Singleton exaggerated the regularity of her treatment at Salud prior to the September 2011 hearing. *See* Doc. 9-2 at 25 ("Another example of exaggeration involves the claimant's record of health care treatment. During the September 2011 hearing, the claimant testified that her primary health care professional is the Salud Clinic, that she receives regular treatment there, and that she goes to the clinic every 3-4 months approximately. The record, however, suggests otherwise."). The ALJ based this finding on Claimant's misrepresentation of her treatment history at Salud during the hearing, not infrequent visits to the clinic. The ALJ apparently intended to highlight the discrepancy between the objective facts derived from the medical record and Ms. Singleton's testimony by referencing treatment gaps

"as much as 6 months apart." The Decision clearly demonstrates that this finding was not based on Claimant's failure to pursue regular medical treatment.

On the other hand, the ALJ did expressly infer from Claimant's infrequent treatment in 2012 that her symptoms were not as severe as she alleged:

> The fact that the claimant only sought treatment twice in 2012 undermines the credibility of her allegations… It is reasonable to conclude that the claimant would have sought more frequent treatment if she was truly experiencing the physical deterioration she described during the hearing. *Moreover, the fact that the claimant was accepted for Medicaid shows that she had insurance to help with the cost of treatment if it was needed, which indicates her lack of treatment was not related to financial limitations.*

Doc. 9-2 at 28-29 (emphasis added). Plaintiff states that "[t]his argument ignores that [Claimant] was not accepted for Medicaid until June 6, 2012… and she was rejected thereafter by the University of Colorado Orthopedics clinic because she only had Medicaid." Doc. 15 at 28. However, the ALJ did consider the fact that Ms. Singleton obtained Medicaid around the time of her first appointment in 2012. Doc. 9-2 at 28 ("According to the medical evidence, the claimant engaged in minimal medical treatment in 2012. In June 2012, the claimant underwent a medication refill consultation (Ex. 21F). The record shows that the claimant had recently been awarded Medicaid benefits… Following her June 2012 examination, the claimant did not seek additional treatment until October 2012 (Ex. 22F/1-2)."). Additionally, the ALJ's assumptions derived from Claimant's failure to pursue treatment are bolstered by the fact that after obtaining Medicaid, she did not go to Salud for her next, and final, treatment visit of the year until five months later. *October 24, 2012 Salud Treatment Notes*, Doc. 9-7 at 145. The fact that an orthopedic clinic did not accept Ms. Singleton as a patient due to her Medicaid coverage does not factor into whether her failure to pursue treatment in 2012 was excused because Salud referred her to that clinic in 2013. *March 19, 2013 Salud Treatment Notes*, Doc. 9-8 at 13. In assessing

14

what attempts Ms. Singleton made to relieve her pain, the ALJ properly considered Claimant's failure to pursue treatment in 2012.

In sum, the court finds the ALJ applied the correct legal standard in evaluating the credibility of Ms. Singleton's statements concerning the intensity, persistence, and limiting effects of her symptoms. The court further concludes that substantial evidence supported the ALJ's credibility determination.

## II.   Opinion Evidence Evaluation

Ms. Singleton challenges the weight assigned to the opinion evidence of her Salud healthcare providers and the consultative examiner, essentially arguing that the ALJ did not provide legitimate reasons for affording these opinions less weight.

"An ALJ must give consideration to all the medical opinions in the record and discuss the weight he assigns to such opinions." *Vigil v. Colvin*, 805 F.3d 1199, 1201-02 (10th Cir. 2015) (citation and internal quotation marks omitted). "Only 'acceptable medical sources'[7] can provide evidence to establish the existence of a medically determinable impairment, only they can provide medical opinions, and only they can be considered treating sources." *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007) (citing 20 C.F.R. §§ 404.1513(a), 404.1527(a)(2), 404.1527(d)). The regulations allow "other medical sources"[8] and "other non-medical sources"[9] to provide evidence "to show the severity of a claimant's impairments and how it affects a

---

[7] Acceptable medical sources include licensed physicians (medical or osteopathic doctors), licensed or certified psychologist, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1513(a).

[8] "In the category of other medical sources, the regulations include, but are not limited to, nurse practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists." *Frantz*, 509 F.3d at 1301 (citing 20 C.F.R. § 404.1513(d)(1)).

[9] The regulations also provide examples of other non-medical sources, which include (1) "[e]ducational personnel ([*e.g.,*] school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers), (2) "[p]ublic and private social welfare agency personnel," and (3) "spouses, parents, and other caregivers, siblings, other relatives, friends, neighbors, and clergy." 20 C.F.R. § 404.1513(d)(2)-(4); *see also* SSR 06-03, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006).

claimant's ability to work." *Id.*   (citing 20 C.F.R. § 404.1513(d)). "When assessing a medical opinion, the ALJ must consider the factors listed in 20 C.F.R. § 404.1527(c) and give good reasons for the weight he assigns to the opinion." *Vigil*, 805 F.3d at 1202 (citations omitted). An ALJ uses the following factors in evaluating medical opinions:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (citation omitted). "[T]he factors for weighing opinions of acceptable medical sources… apply equally to all opinions from medical sources who are not 'acceptable medical sources' as well as from 'other non-medical sources.'" *Frantz*, 509 F.3d at 1302 (citing SSR 06-03p, 2006 WL 2329939, at *4 (S.S.A. Aug. 9, 2006)) (internal quotation marks omitted). The ALJ must provide "specific, legitimate reasons" for rejecting medical source opinions. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003) (citing *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)).

### A.   Salud Healthcare Providers: David Forshay, PA-C and Layne Bracy, M.D.

The administrative record contains opinions from two of the healthcare providers who participated in Ms. Singleton's treatment at Salud, David Forshay, PA-C and Layne Bracy, M.D.

"Under Social Security Administration regulations, the opinion of a treating physician concerning the nature and extent of a claimant's disability is entitled controlling weight when it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the claimant's case record." *Doyal*, 331 F.3d at 762 (citation and internal quotation marks omitted). Before determining whether the

opinions of David Forshay, PA-C and Layne Bracy, M.D. are entitled to controlling weight, the court must first assess whether these healthcare providers qualify as "treating sources" under the regulations. Only "acceptable medical sources," which include medical doctors but not physician's assistants ("PA"), are eligible for treating source status. *See Frantz*, 509 F.3d at 1301. Given that David Forshay is a physician's assistant, he cannot be considered a treating source. *See September 2011 Hearing Transcript*, Doc. 9-2 at 86 ("[ALJ:] David [Forshay] is a physician's assistant"). Likewise, while Dr. Bracy is an acceptable medical source, he does not qualify as a treating source because he had limited contact with Ms. Singleton.[10] Thus, neither David Forshay, PA-C nor Layne Bracy, M.D. is entitled to controlling weight because they are not considered treating sources under the regulations.[11]

"An opinion found to be an examining rather than a treating medical-source may be dismissed or discounted, of course, but that must be based on an evaluation of all of the factors set out in the cited regulations and the ALJ must provide specific, legitimate reasons for rejecting it." *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (citation and internal quotation marks omitted). The ALJ discussed all of the opinion evidence provided by David Forshay, PA-C and Layne Bracy, M.D., summarizing their assertions as to Ms. Singleton's conditions, functional

---

[10] The record contains inconsistent evidence regarding how many times Layne Bracy, M.D. personally examined Ms. Singleton. The administrative record contains only one treatment note from Salud, dated September 9, 2011, that indicates Dr. Bracy treated Claimant himself. Doc. 9-7 at 115-116. However, Dr. Bracy provided a supplemental letter to the agency on October 21, 2011, in which he attested to personally examining Ms. Singleton twice—in 2005 and 2011. *See* Doc. 9-7 at 141 ("Chart entries from 5/25/2005 and 9/9/2011 show that I directly examined the claimant."). This evidence conflicts with Ms. Singleton's testimony during the September 2011 hearing that her first visit to Salud occurred in August 2008. *See September 2011 Hearing Transcript*, Doc. 9-2 at 86 ("[ALJ's Question:] And you have been going to Sallude [sic], at least according to these records, earliest I see is August of '08. Have you been going to Sallude [sic] earlier than that? [Claimant's Answer:] No, Your Honor."). Nevertheless, even crediting the most favorable account of Dr. Bracy's treating relationship with Ms. Singleton, he does not satisfy the requirements for treating source status. *See Doyal*, 331 F.3d at 762 (noting that treating source status "requires a relationship of both duration and frequency").

[11] The Decision incorrectly assumes that these two healthcare providers are treating sources. However, this mistake resulted in harmless error because the ALJ still concluded that their opinions were not entitled to controlling weight. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (finding of harmless error appropriate "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way").

limitations, and ability to work. Doc. 9-2 at 33-35. Claimant's primary healthcare provider at Salud, Mr. Forshay, submitted five separate documents containing to his opinions, which included four Med-9 forms as well as a more detailed functional assessment from June 2010 (*i.e.,* Dizziness Residual Functional Capacity Questionnaire, Arthritis Residual Functional Capacity Questionnaire, and Medical Source Statement Of Ability To Do Work-related Activities (Physical) and Addendum). Doc. 9-7 at 45-49, 58-72, 77-78, 153-54. The agency received the opinions of Layne Bracy, M.D. in two Medical Source Statements, one of which is also signed by Mr. Forshay. *Id.* at 73, 119. Dr. Bracy, who is Mr. Forshay's supervising physician, formed his opinions by reviewing the information obtained in June 2010. *See Dr. Bracy's July 2010 Medical Source Statement*, Doc. 9-7 at 73 ("I have reviewed three questionnaires concerning Ms. Singleton which were completed by David R. ("Dick") Forsley [sic], PA-C, of our office [in June 2010]… I am in substantial agreement with the restrictions and limitations set forth in these three documents."); *see also September 2011 Joint Medical Source Statement*, Doc. 9-7 at 119 ("[Ms. Singleton's] conditions, limitations and restrictions remain unchanged and have not improved since the completion of [Mr. Forshay's June 2010 assessment and Dr. Bracy's subsequent statement adopting those findings].").

The Decision provided specific, legitimate reasons for not affording more weight to these opinions. The ALJ dismissed the Med-9 forms signed by David Forshay, PA-C because they were not well-supported by the relevant evidence. First, Mr. Forshay provided conflicting assertions as to Ms. Singleton's ability to work on forms submitted to the agency just one month apart. *See id.* at 33 ("In January 2010, Mr. Forshay limited the claimant to sedentary work (Ex. 6F)… Then in February 2010, Mr. Forshay asserted that claimant would be unable to perform any work for six months or more."). Second, the ALJ noted the forms dated December 2, 2010,

and November 13, 2012, contained opinions that concerned the ultimate issue of Ms. Singleton's

disability but did not include functional limitations. *Id.* at 34; *see also Castellano v. Sec'y of*

*Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) ("[A physician's opinion that a

claimant is totally disabled] is not dispositive because final responsibility for determining the

ultimate issue of disability is reserved to the [Commissioner]."); 20 C.F.R. §§ 404.1527(d)(1)-

(2), 416.927(d)(1)-(2). As a result, the court finds no error in the ALJ's treatment of the opinions

contained within the four Med-9 forms.

The ALJ analyzed the remaining opinion evidence from David Forshay, PA-C and Layne

Bracy, M.D. together because Dr. Bracy based all of his opinions on Mr. Forshay's June 2010

assessment. Doc. 9-7 at 73, 119. The Decision described the severe functional limitations found

in June 2010 as follows:

> David Forshay, PA-C asserted that the claimant was "incapable of even 'low
> stress' jobs" (Ex. 9F). Additionally, he asserted that the claimant would be
> absent from work more than four days per month. Mr. Forshay also opined that
> the claimant was unable to sit or stand for more than 30 minutes per occasion
> and that she was only able to walk for 20 minutes per occasion, but must do so
> slowly. He further indicated that the claimant was capable of standing and/ or
> walking for less than two hours sitting for four hours during an eight-hour
> workday. He reported that the claimant was able to rarely lift and carry 10
> pounds or less, but he noted that she was never able to twist, stoop, crouch,
> balance, stoop [sic], kneel, crawl, or climb ladders. He did indicate that she
> was able to climb stairs rarely. Further asserted that the claimant was able to
> use her bilateral hands and fingers 30% of the time and that she was only able
> to reach overhead 10% of the time with her bilateral extremities. However,
> later in the same document, Mr. Forshay asserted that the claimant could reach
> overhead occasionally with her bilateral upper extremities, which is defined as
> up to one-third of the time. Finally, Mr. Forshay limited the claimant to
> occasional use of foot controls with the bilateral lower extremities. He also
> included several environmental hazards.

Doc. 9-2 at 33. The ALJ ultimately concluded that the opinions related to the June 2010

assessment were "not consistent with the claimant's treatment records, the objective findings in

the record, and the claimant's reported activities of daily living." *Id.* at 34.

The ALJ expressly considered several *Watkins* factors in evaluating the opinions of David Forshay, PA-C and Layne Bracy, M.D. With respect to the length and nature of the treating relationship, the Decision cited the Salud providers' reliance on Ms. Singleton's self-reported symptoms,[12] which the ALJ did not find credible, as one of many reasons he afforded less weight to their opinions. *See Boucher v. Astrue*, 371 F. App'x 917, 923-24 (10th Cir. 2010) (unpublished) ("Here, the ALJ conducted a proper credibility analysis and reached a permissible conclusion that the claimant was less than fully credible. It was not error for the ALJ to then use this conclusion as one factor among several in reaching a secondary finding that [the treating physician's] opinion should be given less than controlling weight."). As previously discussed, the ALJ reasonably inferred from the treatment records that Claimant attended Salud sporadically, and some of these appointments predominantly concerned her disability claim. The ALJ indicated that Claimant's dual purpose for seeking treatment could have affected the accuracy of information obtained during her appointments. *See* Doc. 9-2 at 35 ("It is in this dual context that medical sources have expressed opinions not only about the claimant's diagnosis and prognosis, but also about the claimant's functional limitations and inability to work.").

The Decision also cautioned against relying on the Salud providers' opinions because their relationship with Ms. Singleton was mostly limited to managing her various medications.

---

[12] Dr. Bracy submitted a supplemental letter to the agency dated October 21, 2011, which explained the basis of the Salud providers' opinions:

> In general, my findings of disability are *based on her subjective symptoms and not on objective findings*. One exception would be x-ray reports from 12/17/2009, which showed arthritic changes in the knees, hips, and lumbar spine.
> Questions 1-7 from your letter refer to a disability form filled out by Dick Forshay [in June 2010], with which I concur. These findings are *not based on objective clinical data but are based on subjective symptoms of the patient*.
> Questions 8-13 pertain to the medical source statement signed by me on 6/26/2010... By "substantial agreement", I mean that I agree fully with the statements in question... As previous, this is *based upon subjective symptoms, not objective data*.

Doc. 9-7 at 141 (emphasis added).

*See id.* at 36 ("It does not appear that [the Salud providers] made an independent, objective assessment of the claimant's functional limitations. It does not appear that [the providers] conducted any type of validity testing… In this case, these medical sources did not review the entire medical record."). The ALJ acknowledged that David Forshay, PA-C and Layne Bracy, M.D. both opined "the claimant is not a malingerer," *id.* at 34, but these declarations would not have resolved his concerns considering their opinions were inconsistent with the contemporaneous treatment notes. For example, the Salud providers asserted to the agency that Ms. Singleton's condition had not improved while their treatment notes establish Ms. Singleton's self-reported pain level (on a scale of one to 10) gradually declined over the course of her treatment at Salud—from 10 out of 10 in 2009 to six out of 10 in July 2013. *See December 17, 2009, Treatment Notes*, Doc. 9-7 at 38; *July 17, 2013, Treatment Notes*, Doc. 9-8 at 5.

The ALJ believed the objective findings did not support the severity of Ms. Singleton's subjective symptoms or the extremely limited functional abilities put forth by the Salud providers. The most obvious inconsistency mentioned in the Decision involves the Claimant's alleged inability to sit for extended periods of time and the ALJ's observations during the hearings. *See* Doc. 9-2 at 25 ("[During the September 2011 hearing,] the claimant testified that the maximum amount of time that she is able to sit at one time is 30 minutes before the pain and other symptoms become so bad that the claimant must either stand up or lie down. However, the claimant was observed during the hearing to sit nearly twice as long—ie, 55 minutes at a time— without changing positions (ie, standing or lying down), despite being reminded at the start of the hearing that changing positions at will was permissible during the hearing."). Similarly, the Salud providers opined that Ms. Singleton would be "incapable of even 'low stress' jobs" due to her difficulty concentrating, *id.* at 33, but "[Claimant] did not demonstrate or manifest any

difficultly concentrating during the hearing." *See id.* at 25 ("The claimant paid attention throughout the hearing; and appeared to process the questions without difficulty; and appeared to respond to the questions appropriately and without delay.").

The ALJ also noted the objective measures (*i.e.,* diagnostic tests and physical exams) did not substantiate the alleged level of deterioration caused by Ms. Singleton's various impairments. Contrary to Plaintiff's assertion, the "longitudinal record" referenced in the Decision includes more than the ALJ's credibility assessment and the opinions of state agency officials.[13] The Decision's meticulous analysis of the medical records provided a comprehensive summary of Ms. Singleton's medical history, which incorporated the objective findings associated with each condition. First, the ALJ determined that the record showed Claimant's knee, hip, and lower back impairments have remained relatively stable:

- July 2009: "the healthcare professional who was caring for the claimant described her gait as steady *suggesting that she was not experiencing significant problems with her knee or hips.*" *Id.* at 26 (emphasis added).

- January 2010: "[David Forshay, PA-C] noted that the claimant's x-rays revealed osteoarthritis of the hips and back. He also noted there *might* be a partial fusion in the claimant's lumbar spine." Doc. 9-2 at 27 (emphasis added); *see also January 8, 2010 Salud Treatment Notes*, Doc. 9-7 at 36 (Claimant reported experiencing an eight out of 10 level of pain during treatment).

- April 2010: "objective findings [from Claimant's physical exam] … show that *apart from discomfort* in her hips and knees, the claimant had *generally good range of motion*. The claimant was also *able to ambulate with normal speed even though her gait was antalgic with some guarding*;"

---

[13] Plaintiff's Opening Brief states, "the ALJ in this matter has created a new concept: a 'longitudinal record' based, not on a single scrap of treating opinion or even the actual examination or Dr. Borja, but instead on a State Agency psychologist's record review and an (outdated) statement of opinion by a non-medical examiner, and his personal credibility assessment of the Plaintiff." Doc. 15 at 30.

"[x-ray] images of the claimant's right knee revealed tricompartmental degenerative changes within the right knee joint with the most severe changes noted in the medial compartment and a *small* right knee effusion;" "[x-ray] images of her right hip revealed *moderate* degenerative changes within the right hip, but *no evidence of acute fractures or dislocation*." Doc. 9-2 at 33 (emphasis added).

- June 2012: "objective findings show that the claimant *did not appear to be in acute distress*, but that she was 'mildly ill appearing.'" *Id.* at 28 (emphasis added); *see also June 6, 2012, Salud Treatment Notes*, Doc. 9-7 at 142 (Claimant reported experiencing an eight out of 10 level of pain during treatment).

- 2012: "the fact that [Claimant only sought medical treatment twice in 2012 for medication refills] further suggests that *her pain was relatively well managed and that her condition was stable*." Doc. 9-2 at 28 (emphasis added); *see also October 24, 2012, Salud Treatment Notes*, Doc. 9-7 at 145 (Claimant reported experiencing a seven out of 10 level of pain during her second and final treatment of 2012).

- February 2013: "objective findings do show that the claimant's left knee was swollen, that she had tenderness over the lateral aspect of the knee, and that her gait was antalgic." *Id.* at 29; *see also February 12, 2013, Salud Treatment Notes*, Doc. 9-7 at 148 (Claimant reported experiencing a six out of 10 level of pain during treatment).

- March 2013: "objective findings [obtained shortly after an MRI revealed a meniscus tear in Claimant's left knee] *remained generally stable with no signs of significant deterioration or improvement*." Doc. 9-2 at 29 (emphasis added); *see also March 2009 Salud Treatment Notes*, Doc. 9-7 11, 13 (Claimant reported experiencing a five out of 10 level of pain during both treatments in March).

- April 2013: "objective findings show that claimant's gait remained antalgic and she was using a cane to ambulate; however, *it does not appear from the record that a treating medical professional prescribed the cane or*

*indicated it was medically necessary*." Doc. 9-2 at 29; *see also April 29, 2013, Salud Treatment Notes*, Doc. 9-8 at 9 (Claimant reported experiencing a six out of 10 level of pain during treatment).

- July 2013: "the claimant's gait *remained* antalgic. The records show that she was wearing a knee brace during the appointment and the notes indicate that the physician's assistant ordered another brace." Doc. 9-2 at 29 (emphasis added); *see also July 17, 2013, Salud Treatment Notes*, Doc. 9-8 at 5 (Claimant reported experiencing a five out of 10 level of pain during treatment).

- 2012-2013: "claimant has reported [experiencing] bilateral knee pain [since September 2011], but the *only objective evidence is related to the claimant's left knee*. However, apart from the MRI images, the 2012 and 2013 treatment records *do not contain significant objective evidence* and … much of claimant's treatment is *still related to medication management*." Doc. 9-2 at 30 (emphasis added).

Second, the Decision points out that the only objective findings related to Claimant's vertigo condition are from an emergency visit to the hospital in July 2009, and the ER treatment notes indicate the hospital discharged Ms. Singleton in stable condition after successfully administering medication to control her symptoms. *Id.* at 26; *see also October 2013 Hearing Transcript*, Doc. 9-2 at 64 ("[Attorney's Question:] Okay. Let's see, what's going on with your vertigo these days? [Claimant's Answer:] The vertigo is getting better with the medication.").

Third, the ALJ explained that the medical records demonstrate Ms. Singleton's functional abilities are only minimally impacted by either her left arm/shoulder impairment, Doc. 9-2 at 18 ("The medical evidence shows that the claimant occasionally mentioned shoulder pain, but the objective medical findings do not reveal evidence of a severe impairment… X-ray images of the claimant's shoulder from June 2011 do not reveal any bony abnormalities… The claimant did tell a healthcare professional that MRI images of her shoulder showed that she has a pinched

nerve, but she has not provided the imaging reports to confirm this assertion… Overall, the medical evidence shows that the claimant's left shoulder and arm disorder are non-severe."), or her neck impairment. *See id.* at 27-28 ("[During Claimant's physical exam in April 2010,] she did not demonstrate any discernable range of motion problems in her cervical spine… the [June 2011] x-ray of her cervical spine did reveal multilevel degenerative disc disease and facet athropathy of the cervical spine without evidence of acute bony abnormalities… [Despite alleging severe symptoms during a July 2011 rehabilitative therapy session,] the claimant still indicated that she was able to take part in vigorous exercise."); *id.* at 28 ("[During a June 2012 medication refill consultation,] [Claimant] had full range of motion in her neck, which is inconsistent with her subjective complaints."). Fourth, the ALJ decided Claimant's "continued symptoms and limitations related to her sleep apnea are minimal" considering her consistent reports that the CPAP machine had improved her symptoms. *See id.* at 29 ("The claimant's October 2013 hearing testimony indicates that she has experienced significant symptom improvement since she began using the CPAP machine… [Ms. Singleton noted during her May 2013 Salud appointment] that she had been sleeping better since she began using the CPAP machine and breathing treatments, which is consistent with her hearing testimony."). Consequently, the ALJ provided specific evidence related to each of Ms. Singleton's conditions to support his conclusion that the objective findings in the longitudinal record establish no more than mild impairments.

The Decision mentions "other factors brought to the ALJ's attention which tend to support or contradict the opinion." *See Watkins*, 350 F.3d at 1301. The Decision initially noted an unexplained internal inconsistency within the June 2010 assessment regarding Claimant's bilateral overhead reaching limitations; Mr. Forshay first opined that Ms. Singleton was limited

to overhead bilateral reaching 10% of an eight-hour workday, but the physician's assistant later asserted that she could perform work-related activities that involve bilateral overhead reaching "up to 1/3" of the time.[14] Doc. 9-2 at 33. Next, the ALJ emphasized that Ms. Singleton's self-reported activities of daily living were incompatible with the subjective symptoms and limitations asserted to the state agency. The Decision states: "[The June 2010 assessment, especially the postural limitations,] is wholly inconsistent with the claimant's reports in 2010 and 2011 that she was able to prepare some meal, clean, go grocery shopping and use public transportation." *Id.* at 34; *see also* SSR 96-2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996) ("[A] treating source's medical opinion on what an individual can still do despite his or her impairment(s) will not be entitled controlling weight if substantial, nonmedical evidence shows that the individual's actual activities are greater than those provided in the treating source's opinion.").

The court finds the ALJ properly considered the *Watkins* factors in evaluating the opinions of David Forshay, PA-C and Layne Bracy, M.D., and the Decision provided specific, legitimate reasons for affording less weight to the Salud providers' opinions.

### B. *Consultative Examiner: Charlene Borja, D.O.*

Plaintiff maintains that the ALJ did not give legitimate reasons for affording the opinions of Charlene Borja, D.O. less weight. *See* Doc. 15 at 26 ("[W]e are back to the original remand order by the Appeals Council: why did the ALJ reject consulting examiner Dr. Borja's opinion? The reasons provided by the ALJ are pure makeweight."). The court disagrees.

---

[14] The court notes the June 2010 assessment contains additional internal inconsistencies. David Forshay, PA-C initially opined that Ms. Singleton could "rarely," defined as 1% to 5% of an 8-hour workday, lift "less than 10 lbs." as well as "10 lbs." Doc. 9-7 at 64. A few pages later, the physician's assistant asserted that Claimant could "occasionally," defined as up to 1/3 of an 8-hour workday, lift "up to 10 lbs." *Id.* at 67. Like the overhead reaching limitation, Mr. Forshay did not acknowledge or explain the conflicting statements as to the lifting limitation in his assessment.

The AC previously remanded the case back to the ALJ in order to "adequately address the medical opinion of the consultative examiner, Dr. Borja." Doc. 9-3 at 54. In granting Ms. Singleton's request for review under the substantial evidence provision, the AC noted "[t]he decision did not acknowledge or identify the specific consideration given to the functional limitations opined by Dr. Borja." *Id.* After conducting a second hearing, the ALJ issued another unfavorable decision on November 22, 2013, which describes the consultative examiner's opinions as follows:

> After examining the claimant, Dr. Borja diagnosed the claimant with right knee pain due to progressive arthritis, benign positional vertigo, and stable depression (Ex. 8F). As for specific functional limitations, Dr. Borja indicated that the claimant was able to stand for one hour out of an eight-hour workday, sit for six hours during an eight-hour workday with frequent breaks, and carry and lift less than 10 pounds. She also noted that the claimant's ability to squat, bend over, and kneel was limited and that she had manipulative limitations that were greater on the right than the left. She precluded the claimant from climbing stairs or being exposed to heights in a workplace setting. Dr. Borja also recommended that the claimant obtain a cane or walker to help her ambulate.

Doc. 9-2 at 33. Thereafter, the ALJ provided six reasons for affording less weight to Dr. Borja's opinions: (1) "[i]n general, Dr. Borja's assessment is inconsistent with the objective findings that show that apart from discomfort in her hips and knees, the claimant had generally good range of motion;" (2) "[t]he claimant was also able to ambulate with normal speed even though her gait was antalgic with some guarding;" (3) "Dr. Borja's opinion is not supported by the previously discussed medical records that do not detail significant abnormalities;" (4) the treatment relationship between Dr. Borja and Ms. Singleton was limited to one exam; (5) Dr. Borja only reviewed a very limited portion of the medical record in forming her opinion; and (6) Dr. Borja's

proposed functional limitations included some restrictions that were stricter than those recommended by her treating providers.[15] *Id.* at 33, 35.

The Decision applied the factors set out by the Tenth Circuit in *Watkins v. Barnhart* to Dr. Borja's opinions. *See* 350 F.3d at 1301. In addressing whether relevant evidence supports these opinions, the ALJ observed that the objective findings obtained during Dr. Borja's consultative examination do not merit the extreme functional limitations listed in her report. *Id.* at 33. Relatedly, the ALJ found Dr. Borja's opinions inconsistent with the record as a whole considering "the previously discussed medical records … do not detail significant abnormalities." *Id.* As the court already addressed at length, substantial evidence supports the ALJ's findings concerning Claimant's longitudinal record as the Decision contains an exhaustive review of the medical records and each conclusion is linked to specific evidence. Accordingly, the court rejects Plaintiff's contention that "[i]n the Decision, the term 'longitudinal record' means only one thing: the credibility assessment of the ALJ." Doc. 15 at 30-31. Likewise, the court is not persuaded by the Opening Brief's reference to various, previously considered, objective findings and statistics published in the Journal of the Canadian Chiropractic Association, *id.* at 24-25, as this argument is nothing more than another improper request to reweigh evidence.

Plaintiff also challenges the treatment of Dr. Borja's opinions by claiming the ALJ improperly substituted his own opinions for that of the consultative examiner: "[t]he ALJ states that Dr. Borja examined the claimant once and therefore was limited to that one point in time

---

[15] Specifically, Charlene Borja, D.O. advocated for lifting and standing limitations that were stricter than those endorsed by Ms. Singleton's primary healthcare providers at Salud. *See id.* at 36 ("Even the treating sources disagreed with Dr. Borja's assertion that the claimant was unable to stand for more than one hour per day. For example, [David Forshay, PA-C]—one of the claimant's treating sources—asserted that the claimant was able to stand and/or walk for two hours during a workday… Similarly, … Dr. Borja asserted that the claimant was not able to lift 10 pounds. However, [Mr.] Forshay indicated that the claimant was able to lift 10 pounds.").

and, 'in contrast, *my assessment* was not limited to a single snapshot of the claimant's condition'

… This remarkable statement is contrary to law." *Id.* at 28. A review of the Decision shows that

the ALJ made this comment while explaining how he evaluated two other *Watkins* factors, the

length and nature of Dr. Borja's relationship with Ms. Singleton:

> I do not agree with the following opinions of the Consultative Examiner (CE) regarding the claimant's residual functional capacity (RFC) (Ex. 8F). The CE examined the claimant only one time; consequently, the resulting assessment was necessarily limited to that one point in time. In contrast, my assessment was not limited to a single snapshot of the claimant's condition. I considered the entire period in question. In addition, the CE had access to a very limited amount of the medical record. In contrast, I had access to the entire medical record and all of the medical source evidence.

Doc. 9-2 at 35. The ALJ's critique of Dr. Borja's opinions reflects the prevailing view that

"findings of a nontreating physician based upon limited contact and examination are of suspect

reliability." *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987) (citation omitted) ("[The

doctor's] report in this case appears to be based on the most limited sort of contact and

examination. There is no indication of careful study of [the claimant's] history or prior

examinations."). The court views the Decision's reference to the ALJ's own assessment of the

record as an attempt to emphasize that Dr. Borja made her functional assessment without a

complete understanding of all the relevant information; the ALJ's statement was not intended to

suggest he gave his own opinion controlling weight. Moreover, the ALJ discussed Dr. Borja's

objective findings and opinions in totally separate sections of his analysis, which suggests that

the weight assigned to the consultative examiner's opinions did not influence the treatment of her

objective findings. The Decision's reasoning establishes that the ALJ applied the correct legal

test when evaluating the opinions of Charlene Borja, D.O.

### C.   State Agency Review: Gayle Frommelt, Ph.D and Kristie Bradbury, SDM

Plaintiff appears to argue that the Decision improperly afforded more weight to the opinions of state agency officials, Gayle Frommelt, Ph.D and Kristie Bradbury, SDM.

The ALJ afforded "substantial weight" to the opinions of Gayle Frommelt, Ph.D, which only pertain to Ms. Singleton's mental health conditions: "Dr. Frommelt opined that the claimant's depressive disorder was non-severe and caused no more than mild functional limitations." Doc. 9-2 at 32-33. Agency Ruling SSR 96-6p provides the following guidance on evaluating opinions of state agency consultants:

> [T]he opinions of State agency medical or psychological consultant or other program physician or psychologist can be given weight only insofar as they are supported by the evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist. The adjudicator must also consider all other factors that could have bearing on the weight to which an opinion is entitled, including any specialization of the State agency medical or psychological consultant. In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.

SSR 96-6p, 1996 WL 374180, at *2-3 (S.S.A. July 2, 1996).

Here, the ALJ concluded that the opinions of the state agency psychologist should be valued over those of the Salud healthcare providers and Dr. Borja for a variety of reasons. Doc. 9-2 at 34. First, the Decision pointed out that Dr. Frommelt "special[izes] in the fields of Claimant's particular impairments" and has "expert[ise] in the evaluation of Social Security Administration (SSA) disability claims." *Id.* Second, the ALJ also found "the opinions of Dr. Frommelt … more consistent with the with the longitudinal record." *Id.* at 35. Third, the Decision further stated "Dr. Frommelt presented more relevant supporting evidence, and

provided more satisfactory supporting explanations, for the opinions given." *Id.*; *see also id.* at

32-33 ("In support of her findings, Dr. Frommelt referenced the claimant's ability to handle her

own finances, her ability to get along with others, and her generally limited treatment record. She

did acknowledge that the claimant was on medication, but she noted the objective evidence

generally shows the medication adequately manages the claimant's symptoms. These findings

are further supported by the claimant's lack of mental health treatment after 2011 and the general

absence of mental abnormalities and subjective complaints in the treatment notes from her

primary care provider. Finally, Dr. Frommelt's medical assessment is the only opinion that

addresses the claimant's mental impairments."). The ALJ's reasoning demonstrates that the state

agency psychologist's opinions were entitled to more weight than the opinions of treating and

examining sources on the issue of Ms. Singleton's mental health.

     Conversely, the Decision includes somewhat contradictory statements concerning the

weight given to Kristie Bradbury's assessment as the Single Decision-Maker ("SDM") at the

initial level of the disability determination for Ms. Singleton. During the initial discussion of Ms.

Bradbury's opinions, the ALJ provided a fairly detailed explanation as to how the SDM's

opinions factored into his analysis:

> The State Agency reviewing consultants [sic] assessment is based on objective
> medical evidence and not merely based on the claimant's subjective
> complaints. Furthermore, this opinion contains a thorough explanation to
> support the functional limitations. I recognize that a disability examiner and
> not a medical professional provided this opinion, which means this opinion is
> not afforded evidentiary weight, I do find this is the only functional assessment
> in the entire record that is consistent with the medical evidence and that is not
> based primarily on the claimant's subjective complaints.

*Id.* at 32. Thereafter, the Decision states, "I have afforded greater weight to the opinions of the

State reviewing consultant and Dr. Frommelt." *Id.* at 34. As the Commissioner suggests, this

statement appears to be "merely an inartful phrasing given [the ALJ's] statement earlier in his

decision." Doc. 16 at 20, n.11; *see also Wall v. Astrue*, 561 F.3d 1048, 1069 (10th Cir. 2009) (citation and internal quotations omitted) ("[W]e have previously rejected a construction of *Clifton* [*v. Chater*, 79 F.3d 1007 (10th Cir. 1996)] that, based on a reading of the ALJ's decision as a whole, would lead to unwarranted remands needlessly prolonging administrative proceedings."). As such, the ALJ did not err in considering Kristie Bradbury's opinions.

## CONCLUSION

Based on the foregoing reasons, it is ORDERED that the Commissioner's Decision is AFFIRMED.

DATED at Denver, Colorado, this 6th day of December, 2016.

BY THE COURT:

s/Craig B. Shaffer
United States Magistrate Judge